# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KAYLA SOUTH,

        Plaintiff,                       CIVIL ACTION NO 09-14740

        v.                              DISTRICT JUDGE JOHN FEIKENS

MIDWESTERN AUDIT                MAGISTRATE JUDGE MARK RANDON
SERVICES, INC., and
CONSUMERS ENERGY CO.

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kayla South ("Plaintiff") filed this action in which she alleges that Defendant Midwestern Audit Services, Inc. ("Midwestern") and Defendant Consumers Energy Co. ("Consumers Energy") (collectively "Defendants") violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Michigan Occupational Code ("MOC"), M.C.L. § 339.101 *et seq*.[1] The alleged violations concern the omission of certain statutory notification provisions in a letter sent by Midwestern to Plaintiff and other putative class members about their past due Consumers Energy bills. Defendants argue that they have not violated the provisions of either statute.

Before the Court is Plaintiff's motion for class certification (Dkt. 27), Defendants' motions for summary judgment and Defendants' requests for sanctions against Plaintiff and her counsel (Dkts. 30 and 38). These matters were referred to the undersigned for a report and

---

[1] Plaintiff cites the MOC as M.C.L. 339.901, *et seq*., but it is in fact M.C.L. § 339.101, *et seq*. M.C.L. § 339.901(b) defines the term "collection agency," which is discussed below.

1

recommendation pursuant to 28 U.S.C. § 636 (Dkt. 6). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's motion for class certification be **DENIED**, that Defendants' motions for summary judgment be **GRANTED** and that Defendants' requests for sanctions be **DENIED**.

I. FACTUAL BACKGROUND

In 2007 and 2008, Plaintiff lived with her boyfriend, Jeff Kozlowski, on Loxley Road in Houghton Lake, Michigan (Dkt. No. 30, Ex. 3, p.41, line 25-p.42, lines 1-3; Dkt. No. 38, p.2). Mr. Kozlowski had a Consumers Energy account in his name while the couple lived together at that location (Dkt. No. 27, pp.2-3). Plaintiff's name appeared on the lease at the Loxley Road address during the entire time that Consumers Energy supplied energy service to the residence (Dkt. No. 38, p.2). Plaintiff also admitted that when she lived with Mr. Kozlowski at the Loxley Road address, she used utility services provided by Consumers Energy (Dkt. No. 30, Ex. 3, p.51, lines 3-6).

In late 2008, Plaintiff and her boyfriend moved from Loxley Road to a residence on Westshore Drive in Houghton Lake (Dkt. No. 38, p.1). Prior to moving from Loxley Road, however, Plaintiff and Mr. Kozlowski had accumulated a $321.11 Consumers Energy debt. *Id.* In 2009, Midwestern sent six letters to Plaintiff's boyfriend regarding the outstanding debt from the Loxley Road address (*Id.*, Ex. 6, ¶ 2). In September 2009, Mr. Kozlowski made one $50 payment, bringing the outstanding balance of the bill to $271.11. *Id.* However, due to its inability to collect the entire amount owed, Consumers Energy referred the remainder of the outstanding bill to Midwestern (Dkt. No. 30, p.4; *Id.*, Ex. 2, ¶ 16).

### A. Consumers Energy's Contract with Midwestern

The contract between Consumers Energy and Midwestern establishes three ways in which Midwestern can provide services to Consumers Energy (Dkt. 44, Exs. 6, 13). First, Consumers Energy refers accounts with outstanding bills directly to Midwestern for collection, and Midwestern is paid 25% of any amount collected. Second, Midwestern's attorney can collect outstanding Consumers Energy bills, and Midwestern is paid 45% of any amount collected by its attorney. Lastly, if through its independent auditing procedure, Midwestern identifies a debtor that is currently using gas and/or electric service on a Consumers Energy' line through a new account, Midwestern can notify the debtor that his/her balance will be transferred from the old to the new account (Dkt. No. 44, Ex. 6, ¶¶ 3,7).[2] In these instances, Midwestern is paid 10% of the amount transferred (*Id.*) and *Consumers Energy* then collects the transferred amount through its ordinary billing practices. In other words, the balance transfer is the only service for which Midwestern is compensated without active collection activity on its part.

### A. *Plaintiff's New Consumers Energy Account in Royal Oak*

In late 2009, Plaintiff and her boyfriend moved from Westshore Drive in Houghton Lake, Michigan to Vermont Avenue in Royal Oak, Michigan (Dkt. No. 30, Ex. 3, p.52, lines 18-25; Dkt. No. 38, p.1). At that time, the Consumers Energy bill was still outstanding (*Id.*, p.2). When Plaintiff and Mr. Kozlowski moved to Royal Oak, Plaintiff admitted that she was aware of the outstanding bill (Dkt. No. 30, Ex. 3, p.13, lines 9-12). Because of this debt, "Consumers told [Plaintiff's boyfriend] he couldn't" turn on service in his name in Royal Oak (*Id.*, Ex. 3, p.53, lines 11-18). Plaintiff, therefore, opened a new Consumers Energy account in her name (Dkt. No. 38, p.2).

---

[2] The State of Michigan, through the Michigan Public Service Commission ("MPSC"), has enacted rules to allow for the transfer of bills between utility accounts of customers who may have attempted to avoid paying their utility bills (Dkt. No. 38, p.3).

### B. *Midwestern's Communication with Plaintiff Regarding the Transfer of her Account Balance from the Houghton Lake Address*

While attempting to collect the debt directly from Mr. Kozlowski, Midwestern discovered that Plaintiff – who, again, had recently set up a Consumers Energy account in Royal Oak – had lived with him at the Houghton Lake location where the outstanding bill had accrued. Pursuant to its contract with Consumers Energy, Midwestern then sent Plaintiff a letter, on November 2, 2009, notifying her that the outstanding Houghton Lake bill would be transferred to Plaintiff's new Royal Oak account (Dkt. No. 30, Ex.1). The letter was printed on "Midwestern Audit Services, Inc." letterhead. It lists Plaintiff's current Consumers Energy account number, as well as Plaintiff's current service address in Royal Oak. The first line of the text reads: "A recent review of your records indicates an outstanding balance for the account(s) below." The letter then lists the account number associated with the debt, the outstanding amount and the service address on Loxley Road in Houghton Lake. The letter then goes on to say:

> "For Your [sic] convenience in making payment, this amount will be transferred in ten (10) days to your present account and will appear as a previous balance on your next monthly billing. SHOULD YOU HAVE ANY QUESTIONS CONCERNING THIS MATTER, PLEASE CONTACT OUR [MIDWESTERN'S] OFFICE AT 1-877-777-0342." *Id.* (emphasis in original)

After receiving this letter, Plaintiff called Consumers Energy (*Id.*, Ex. 3, p.63, line 21-p.64, line 1) and sent Midwestern a "cease and desist" letter (*Id.*, Ex. 4). However, Plaintiff also testified that, although the letter asked Midwestern to cease and desist from calling her, she had never actually received any phone calls from Midwestern (*Id.*, Ex. 3, p.14, lines 8-10; *Id.*, Ex. 3, p.17, lines 4-8). Plaintiff also stated that the November 2 letter was the only letter she received from Midwestern (*Id.*, Ex. 3, p.13, lines 19-22). Furthermore, Plaintiff acknowledged that Midwestern's letter stated the outstanding bill would be transferred (*Id.*, Ex. 3, p.32, lines 20-22), but did not say that Midwestern was attempting to collect a debt (*Id.*, p.32, lines 17-19). Besides

4

sending the "cease and desist" letter to Midwestern and calling Consumers Energy (*Id.*, Ex. 3, p.14, lines 11-12; *Id.*, Ex. 3, p.55, lines 8-13), Plaintiff took no other steps to dispute the debt transferred to her Royal Oak Consumers Energy account (*Id.*, Ex. 3, p.55, lines 8-13).

On November 12, 2009, the outstanding balance was transferred to Plaintiff's Consumers Energy account (Dkt. No. 44, Ex. 3). On December 24, 2009, Consumers Energy sent Plaintiff a notification that service would be turned off unless she paid the bill (*Id.*, Ex. 4). In response, Plaintiff's mother paid the outstanding bill (Dkt. No. 30, Ex. 3, p.57, lines 14-16) and Plaintiff subsequently reimbursed her mother (*Id.*, Ex. 3, p.62, lines 15-16).

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 733 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, here Plaintiff Kayla South. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

5

> concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but. . .by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.  ANALYSIS

Plaintiff alleges several violations of the FDCPA and MOC, all related to omissions in the November 2, 2009 transfer letter sent by Midwestern to Plaintiff and in similar letters sent to other putative class members. In particular, Plaintiff argues that the required consumer notifications, such as "adequate notice of the debt" and of the "statutory thirty day *right to dispute and validate the debt* and avoid further collection if they did not owe the subject debt under 15 U.S.C. § 1692g" were unlawfully omitted from the transfer letter (Emphasis in original) (Dkt. No. 47, p. 6).[3] Both Defendants have filed motions for summary judgment, arguing that the transfer letter does not violate the provisions of either statute.

In the opinion of the undersigned, Defendants' motions for summary judgment should be granted and Plaintiff's case should be dismissed with prejudice. As such, the undersigned also recommends that Plaintiff's motion for class certification be denied, since a decision that the claim of the named plaintiff lacks merit ordinarily disqualifies the named plaintiff as a proper

---

[3] Plaintiff also argues, unpersuasively, that Midwestern is a "flat-rater" under 15 U.S.C. § 1692j because the transfer letter created a false impression that Midwestern had a role in collecting the debt when, in fact, it did not (*Id.* at p. 12). First, as discussed below, the November 2 communication was not a debt collection letter, and second, it was Midwestern's independent audit that identified Plaintiff as a responsible party for the outstanding Consumers Energy debt.

class representative. The effect is to moot the question of whether to certify the suit as a class action unless the lawyers for the class manage to find another representative. *See e.g., Cowen v. Bank United of Texas FSB*, 70 F.3d 937, 941-42 (7th Cir. 1995). Plaintiff's lawyer could not do so here because the ground on which the undersigned recommends dismissal of Plaintiff's claims would apply equally to any other member of the putative class.

Each Defendant is discussed separately below:

### A. Midwestern Audit Services, Inc.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. § 1692a(2), and thus, not all communications made to a debtor in regard to a debt are made for collection purposes. The initial communication with a debtor must contain certain consumer protection notifications *if* it is "in connection with the collection of any debt." 15 U.S.C. § 1692g(a). However, the FDCPA does not define "in connection with the collection of any debt."

Midwestern's November 2, 2009 letter to Plaintiff was not sent in connection with the *collection* of her outstanding Consumers Energy debt for several reasons. Most pertinently, although Plaintiff has attempted to distinguish the letter in this case from the one sent in *Mabbitt v. Midwestern Audit Service*, *Inc.*, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008), there are no significant differences between *Mabbitt* and the present case.[4] Indeed, the transfer letters sent by

---

[4] The Court in *Mabbitt* held that the transfer letter in that case was not in connection with the collection of any debt, for purposes of the FDCPA.

7

Midwestern to Consumers Energy customers in both cases are nearly identical – the only two distinctions being the contact entity to whom questions are to be directed, and the length of time before the debt will be transferred. Specifically, in the present case, Midwestern gives its own contact information (Dkt. No. 30, Ex.1), while the *Mabbitt* letter directs a debtor to contact Consumers Energy (Dkt. No. 47, Ex. 15). Secondly, in this case, the letter said the outstanding debt would be transferred in 10 days (Dkt. No. 30, Ex.1), whereas in *Mabbitt*, a debtor is simply told that the debt will be transferred, but is not told the number of days in which it will be transferred (Dkt. 47, Ex. 15). However, these two minor differences are immaterial to the ultimate analysis and the undersigned finds that the reasoning articulated in *Mabbitt* applies squarely to the present case.

As *Mabbitt* recognized, it must be determined whether the letter that Midwestern sent to Plaintiff is a "debt collection" for purposes of the FDCPA. Other courts have also recently recognized that "the language used in the communication is important in determining whether it was sent 'in connection with the collection of a debt.'" *Thompson v. BAC Home Loans Servicing, L.P.*, 2010 WL 1286747, at *4 (N.D. Ind. Mar. 26, 2010), citing *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). The undersigned finds that the November 2 letter is not a debt collection effort, but rather merely informs Plaintiff of the fact that her debt will be transferred.

*Mabbitt* also found *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389 (6th Cir. 1998) to be instructive. *Lewis* involved a credit card company that had referred a debtor's outstanding bill to a collection agency. Even after the debtor sent a cease and desist letter to the collection agency, the agency contacted the debtor on two separate occasions. One of these letters stated, in pertinent part:

> In order to provide you with an opportunity to pay this debt, please select one of the following payment arrangements and enclose payment, or provide me with a number where I can contact you to discuss terms. . .this is an attempt to collect a debt…*Id.* at 396.

The Sixth Circuit held that this letter – which is much more of a solicitation for payment than the transfer letter sent by Midwestern in the present case – was a noncoercive settlement offer to remedy the situation and was, therefore, not in violation of the FDCPA. *Id.* at 399. The same reasoning applies here and the undersigned finds that the November 2 communication sent by Midwestern to Plaintiff was a notification-of-transfer letter and not an attempt to collect a debt, at least for purposes of the FDCPA. Therefore, the letter was not required to comply with the FDCPA and, consequently, did not violate that statute.

Put differently, the purpose of the November 2 letter from Midwestern was to inform Plaintiff that a previous debt would be transferred to her current account. Even if Midwestern's ultimate goal in sending the transfer letter had been to ensure payment of the debt to Consumers Energy, this does not alter the nature of the letter from one providing notification to one attempting to collect a debt. *See e.g.*, *Thompson v. BAC Home Loans Servicing, L.P.*, 2010 WL 1286747, at *5 (N.D. Ind. Mar. 26, 2010); *Gillespie v. Chase Home Fin., LLC*, 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009). Again, not every communication sent on behalf of a debt collector is an attempt to collect a debt. *Gillespie*, 2009 WL 4061428, at *3. Therefore, by merely sending a notification-of-transfer letter to Plaintiff – which did not demand payment – Midwestern was not attempting to collect the outstanding Consumers Energy debt. Indeed, the Seventh Circuit has recognized, persuasively, "that a letter informing plaintiffs of the current status of their account and demanding no payment was not a communication 'in connection with the collection of any debt' under the FDCPA." *McCready v. Jacobsen*, 2007 WL 1224616, *1 (7th Cir., April 25, 2007) (citing *Bailey,* 154 F.3d at 388-89). Additionally, as Plaintiff herself

stated, once Midwestern sends out a notification-of-transfer letter, it cannot negotiate a settlement or enter into a payment plan with the debtor (Dkt. No. 47, p.3); rather, the debt itself is collected by Consumers Energy. *Id.* And Consumers Energy is permitted to collect such debt outside the auspices of the FDCPA because it "owns" the debt, as is discussed in greater detail in Section B, below. Simply because Midwestern is a debt collector and sends out correspondence does not mean that every letter that Midwestern sends out is a communication that must comply with the FDCPA.

Other courts have found similar letters to the one sent in this case to be informational letters and not attempts to collect a debt. In *Gillespie*, the court held that letters sent to mortgagees who were in default were informational letters and not an attempt to collect a debt, and therefore, not in violation of the FDCPA. *See, Gillespie, supra,* 2009 WL 4061428 *3 (N.D. Ind. Nov. 20, 2009). The *Gillespie* letter, unlike the letter in the letter in the present case or in *Mabbitt,* also advised the debtor that he or she had several ways to resolve his or her delinquencies and should contact Chase's Homeowner's Assistance Department "immediately" in order to help all parties come to a resolution. *Gillespie*, 2009 WL 4061428, at *2. Such language is arguably much more of an attempt to collect a debt than is the letter in the present case. Yet, *Gillespie* held that the letter at issue was not in violation of the FDCPA because it did not "provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form." 2009 WL 4061428, at *5.

In sum, the undersigned finds that the letter sent by Midwestern to Plaintiff was in the nature of providing information, as opposed to being a debt collection demand. As such, the letter is not a "debt collection" communication for purposes of the FDCPA and Midwestern is entitled to summary judgment.

## B. *Consumers Energy*

Plaintiff's case against Consumers Energy fails for the same reasons that Plaintiff's case fails against Midwestern (*i.e.* that the letter sent by Midwestern was not sent "in connection with the collection of any debt") and for additional reasons.

Consumers Energy avers that the FDCPA does not govern its conduct in this case because it is not a "debt collector" as that term is contemplated by the FDCPA. Under the FDCPA, "debt collector" refers to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). This definition does not include a creditor – "any person who offers or extends credit creating a debt or to whom a debt is owed" – or "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person...." 15 U.S.C.A. § 1692a(4), (6)(F); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 698-99 (6th Cir.2003). Consumers Energy's argument is well-taken.

Consumers Energy is a public utility that sells gas and electric utility services to customers in Michigan (Dkt. No. 30, Ex. 2, ¶ 26). To the extent it engages in any collection activities, it does so strictly as a creditor collecting its own debts (Dkt. No. 30, Ex. 2, ¶ 21). As such, Consumers Energy is not a debt collector or a collection agency under the FDCPA. *See* 15 U.S.C. § 1692a(6). Furthermore, since Consumers Energy is a public utility, it is closely regulated by the Michigan Public Service Commission ("MPSC") and, incidentally, the MPSC

11

explicitly allows the transfer of unpaid utility bills in the manner that occurred in this case. *See* MPSC Rule 460.124(2).

Consumers Energy sometimes enters into contracts with licensed collection agencies, such as Midwestern, to assist in the collection of unpaid utility bills (Dkt. No. 30, p.4). As noted previously, among the services provided by Midwestern to Consumers Energy is sending notification-of-transfer letters (Dkt. No. 30, Ex. 2, ¶ 14).[5] Although the contract between Consumers Energy and Midwestern does not explicitly state that Midwestern is required to send out notification-of-transfer letters, the fact that Midwestern sends them out is not indicative of deceit or a violation of the FDCPA.

In sum, there are several reasons why Consumers Energy is not in violation of the FDCPA. First, in this case, Consumers Energy did not contact Plaintiff, rather Midwestern did. Second, as discussed in Section A above, the letter Midwestern sent to Plaintiff was a notification letter indicating that an outstanding debt would be transferred to her current account, it was not attempt to collect a debt. Third, because Midwestern is a separate company from Consumers Energy and Midwestern sent the November 2 letter to Plaintiff, it is not possible for Consumers Energy to have used another name – the so called "false name" – in an attempt to collect Plaintiff's debt. Finally, Consumers Energy is not a "debt collector" for purposes of the FDCPA.

As such, Consumers Energy is also entitled to Summary Judgment on Plaintiff's FDCPA claims.

---

[5] The undersigned does not find, contrary to Plaintiff's assertions, that Consumers Energy controlled Midwestern by making suggestions about the wording of the letter sent to Plaintiff and other Consumers Energy customers.

*C. State Law Claims*

Having disposed of FDCPA claims giving rise to its original jurisdiction, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the undersigned recommends that Plaintiff's state law MOC claims be dismissed without prejudice to Plaintiff's right to re-file them in state court. *See* 28 U.S.C. § 1367(c)(3).

*D. Sanctions*

Defendants also request sanctions against Plaintiff under Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and/or 15 U.S.C. § 1692k(a)(3). Although a close call, the undersigned recommends against sanctioning Plaintiff or her attorney in this case. As a preliminary matter, neither Defendant filed an Affidavit setting forth precisely what amounts they are requesting in sanctions. As such, the undersigned is unable to fully evaluate Defendant's sanctions requests.

In any event, a party seeking Rule 11 sanctions must satisfy the procedural requirements of Rule 11(c)(1)(A), commonly known as the "safe harbor" provision. This is an "absolute requirement." *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997). The safe harbor provision sets out a two-step process: "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Id*. at 294. Here, Defendants did not follow the procedural requirement of serving a Rule 11 motion on Plaintiff and then waiting 21 days after service to allow Plaintiff an opportunity to withdraw the challenged claims. As such, Defendants are not entitled to Rule 11 sanctions.

The unavailability of Rule 11 sanctions in the present case does not, however, rule out the possibility that attorney fees may be assessed against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. Indeed, Judge Edmunds awarded § 1927 sanctions of $10,223.65 in attorney's fees against

Ms. Mabbitt's counsel, the very same lawyer as Plaintiff's counsel in this case. *See Mabbitt v. Midwestern Audit Service, Inc*., 2008 WL 1840620 (E.D. Mich., April 23, 2008).

Section 1927 states that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 does not require a showing of subjective bad faith but, rather, is satisfied "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (quoting *Ridder*, 109 F.3d at 298). Mere negligence or inadvertence, however, will not support a § 1927 sanction. *Riddle*, 266 F.3d at 553. Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

While it is a very close call, the undersigned finds that, since the letter sent by Midwestern to Plaintiff in this case is not identical to the letter sent by Midwestern to the plaintiff in *Mabbitt*, Plaintiff had at least a colorable claim in this matter and Plaintiff's case was not entirely frivolous. Moreover, *Mabbitt* was not appealed to the Sixth Circuit thus, even though the undersigned finds the reasoning of *Mabbitt* completely applicable to the case at bar, *Mabbitt* is not binding authority on the present case. The undersigned, however, cautions Plaintiff's counsel to be very circumspect in filing future cases based upon the theories espoused in *Mabbitt* and in the present case; sanctions may very well be appropriate in the future, should Plaintiff's counsel persist in re-filing cases that have been consistently dismissed.

Consumers Energy also requests sanctions pursuant to 15 U.S.C. § 1692k(a)(3) of the FDCPA, which permits the court to award such fees to a defendant in a FDCPA case where the court finds that the case "was brought in bad faith and for the purpose of harassment." Neither situation is present here. In light of the remedial purpose of the FDCPA, the undersigned construes Section 1692k(a)(3) narrowly; as a practical matter it appears designed to thwart efforts of a consumer to abuse the FDCPA and avoid responsibility to pay a legitimate debt. The record does not demonstrate that Plaintiff instituted this suit with those purposes in mind, and Consumers Energy's request for statutory fees under the FDCPA should likewise be denied.

In sum, the undersigned recommends that Defendants' requests for sanctions against Plaintiff and her counsel be denied.

### E. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motions for summary judgment be **GRANTED**, Plaintiff's motion for class certification be **DENIED** and Defendants' requests for sanctions against Plaintiff and her attorney be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>MARK A. RANDON<br>UNITED STATES MAGISTRATE JUDGE

Dated: August 12, 2010

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, August 12, 2010, by electronic and/or first class U.S. mail.*

<i>s/Melody R. Miles<br>Case Manager to Magistrate Judge Mark A. Randon<br>(313) 234-5542</i>